et al. Oral argument not to exceed 15 minutes per side. Philip Hammersley, for the appellant, you may proceed. Good morning, your honors. Philip Hammersley on behalf of the state. Before I begin, I would like to confirm that I've reserved three minutes for a vote. Very well. May it please the court. The NBRA ensures that eligible applicants can register to vote, but it also exists to protect the integrity of the electoral process. Tennessee's documentation policy furthers both aims by providing election officials what they need to distinguish between appellants who are eligible to register to vote and those who are not. The decision below erred by entertaining the NBRA claim because the NAACP lacks standing both as a matter of law and as a matter of fact. But even if the NAACP had standing, the documentation policy complies with the NBRA. I'd like to focus my time this morning on standing, but I am of course happy to answer any questions that your honors have about the legality of the standing series. First, Havens categorically does not apply to cases like this one, where an unregulated organization seeks prospective relief against conduct that does not violate its own legal rights. Can I stop you there and ask a hypothetical? I'm curious what your position would be. Suppose the NAACP identified a specific Tennessean who had a felony and was trying to register but didn't have, say he lost his certificate of voter restoration materials, and so it was under the documentation policy he was going to have to drive to the court or do what they kind of hypothesize in their affidavits. If it was at that specific level, we have a person, we know that he wants to go to the court, NAACP is going to help him, would that be enough to establish standing to seek an injunction against the documentation policy as applied to that felon? It would obviously be applied to the NAACP, but that the felon didn't have to get the documents for the documentation policy. So I think the felon might have standing with respect to the NAACP. No, we don't think that would be sufficient to establish standing. We think that the specific facts requirement might be satisfied, but we think that the resource costs that the NAACP would incur with respect to assisting that individual felon comply with the documentation policy, that's just too attenuated from the challenge conduct of the documentation policy. Would you agree? I mean, I suppose it's an opportunity cost, but it's a dollars and cents cost if it's a drive to the court facilities. So would you agree that that could qualify as an Article III injury? So it satisfied the concreteness and particularity elements? Yeah, I think that would satisfy the injury requirement. You know, we might quibble about the imminence, but in general, I think, yes, the expenditure of time and resources is going to be an injury in fact. And I don't think that the Alliance for Democratic Medicine says otherwise. I think Alliance is really pushing back on the idea of causation and whether it is plausible to say that individuals or organizations who aren't regulated by the challenge policy can say that those costs are in fact traceable to the challenge conduct. So I understand where you're coming from, but I have a hard time distinguishing that hypothetical from earlier in the Alliance opinion, in which they said consumers would be able to sue for regulations on manufacturers that increase the costs and pass the costs onto them. So how would that hypothetical be different from just a consumer? Yeah, I think the hypothetical is different because the causal chain is much more attenuated here as opposed to in the hypothetical in the Alliance. There you have a direct causal chain between the interference with the manufacturer and the plaintiff there. Here, the causal chain is much more attenuated because in order for the NAACP to incur the resource costs, an individual who is subject to the documentation policy has to approach the NAACP, agree to enlist the NAACP's help. That individual has to decide that they want to register to vote. That individual has to fail to bring the required documentation, and then the NAACP has to also make the voluntary choice to help the individual out. So the causal chain is much more attenuated than in that hypothetical you presented, and the NAACP would look much more like the doctors, the plaintiff doctors in the Alliance case, because the doctors in that case also alleged that they'd have to spend more time and resources helping individuals who are coming in to be treated because of the downstream effects of nifepristone, and the court said no, that's too attenuated as a matter of law, even if it is true that those are predictable consequences of the challenge policy. So we think that that's apt analogies here. I'm sorry, Judge Larson. So I'm sorry about that. But what if, I thought that Judge Murphy's hypothetical was trying to take away some of the speculative nature, like, oh, it's unclear whether these things would actually happen, whether anyone would actually present with the nifepristone complications. In other words, by saying they've identified a specific individual, maybe they've identified multiple specific individuals, which I know that's not this case, but they've identified lots and lots of specific individuals. This happens all the time. Therefore, it's inferable that it's likely to happen again in the future. This is the regular course of business. I guess I don't understand why it's more attenuated than competitor standing, which is indirect, an indirect injury, and which the alliance opinion suggests is a valid theory. Right? So the government relaxes a regulation on my competitor. I get to sue to say that the government should be, you know, enforcing that against my competitor. I mean, the DC Circuit has upheld that for years, and the alliance approves it. So why is this more attenuated? Yes, Your Honor. So I think with respect to competitor standing, you have the government conduct, which directly makes it easier for a competitor to take action, which in turn directly harms the plaintiffs in those cases. But this makes it directly harder for the felon to register to vote. And if the NAACP is in the core business of getting people registered to vote, why doesn't it affect their core business? It makes it more expensive, both for the felon and for the assistant. Yes, Your Honor. So our point is not that it is speculative whether these costs are going to be incurred. Of course, we have the specific facts argument. We think that the court and alliance distinguish between speculative harm and attenuated harm. And with respect to speculation, this is from the majority opinion in alliance, Justice Kavanaugh said, quote, the causation requirement also rules out attenuated lengths. That is where the government action is so far removed from its distant, even if predictable, ripple effects that the plaintiffs cannot establish Article III standards. So the point is that even if a consequence is predictable, even if it is predictable that the NAACP would spend more time and resources here, the causal chain is too attenuated. And we think it's too attenuated here as opposed to the competitor standing inquiry because of all of the different steps that individuals must take, individual third parties, not before the court must take before the NAACP incurs its costs. We think that the plaintiff here, the NAACP, looks much more like the plaintiff doctors in Alliance for Democratic Medicine than the competitors in your hypothetical. You mentioned a lot about core business activity. What does that matter? That just seems to be made up to me. A dollar and cents injury is a dollar and cents injury, whether it's my core business activity or whether I do it on the side. So just assume I disagree with you and I think that it's not too attenuated. Do you think in the hypothetical of a specific individual, do you think it really matters whether it's the NAACP's core business activity or a subsidiary activity or whether it's the NAACP who decides to drive or Kroger? Because in their good graces, they just want to help the person. It just strikes me as strange to say that has anything to do with standing, that it has to be within an organization's core function. Your Honor, I think it would, I guess the way I understand it is that I disentangle organizational standing from havens. Havens is one way that organization can establish standing, but it's not the only way. So in your hypothetical, if you agreed that the costs were caused by the documentation policy, we don't think that they would have to show that it affects their core business activities because it would be a pocketbook harm, which I have said is a textbook injury. And I don't think Alliance says anything to the contrary. I think where the core business activities comes in is insofar as a plaintiff tries to rely on havens. Havens is an unusual case. That case involved a direct violation of a legal right. And we think that the best way to understand the direct interference with core business activities is to satisfy the Spokane requirement that an individual or organization that is alleged a violation of their legal rights has to show more than the bare violation. And the more in that example would be showing that the violation completely and directly interfered with the organization in a way so that they can satisfy the concrete misrequirement articulated in, elaborated in Spokane. But I do think I want to come back to attenuation because I think that's the cleanest way to resolve this case. You cited in our papers the Taranee and Crawford decisions. And those decisions from this court stand for the proposition that when an unregulated plaintiff is before the court and seeks to assert standing based on harms that are caused essentially by independent third-party decisions, the challenge conduct has to have a determinative or coercive effect on those independent third parties. So as applied to this case, that would mean that in order for causation to be satisfied, the organization, excuse me, the NAACP would have to show that the documentation policy essentially coerced or forced individuals to go to the NAACP and enlist their help. And that's simply not what is happening here. There are many different voluntary steps that those individuals take before the NAACP gets involved. Thank you, counsel. Thank you. We'll now hear from Appley's counsel. Thank you, your honors. And may it please the court. My name is Danielle Lang and I represent the Tennessee NAACP. And I too will start with standing. And Tennessee NAACP standing in this case is a classic application of havens as it has been clarified by Alliance for Hippocratic Medicine. Tennessee NAACP is in the business of registering voters. It has been in the business of registering voters for all of its storied history, and it will continue to be in the business of registering voters regardless of Tennessee's actions. So unlike Alliance for Hippocratic Medicine, this is not a case of manufactured standing of trying to spend your into standing. Rather, this is an organization that is in the business of registering voters. And when you make it harder to register voters, you make it harder for the groups that are in the business of registering voters. Counsel, here you have, I see more generalized allegations of effect on your business activities than there was in havens realty. It seemed like there were specific testers that were identified and it seemed much more particularized. Do you think you have that kind of proof here? What's your answer to that? And do you need more discovery to find it? A couple of responses, Your Honor. First, I do think that the record below allowed for the findings from the district court of ongoing injury. And some of that has to do with just the nature of voter registration activities. What the two declarations from the Tennessee NAACP president show are that there is an ongoing weekly, every week registering of voters and with a particularized focus on helping people with convictions. I think that plainly shows without any kind of contrary evidence that they are regularly engaged in the practice of registering people with convictions. And you have to combine that with the record evidence of a policy. This isn't a case like Lyons say, where there was a one-off activity of a chokehold. This is a written down policy that every single time an application comes in from a person with a conviction without this documentation, it will be rejected. That being said, Your Honor, I do want to point to the record that's already been developed after briefing on summary judgment on these claims in the future claims, which put evidence directly into the record that's directly responsive to Judge Murphy's hypothetical. We have a declaration from a member of Tennessee NAACP from a summary judgment that was developed on other claims in this case, explaining that she had her rights restored. She moved from one county to another and she had her registration application rejected. She then had to go to another county, go back to the county she previously lived in, ask them for the documentation, and then turn in that documentation to the new county. None of that was at all necessary. Of course, that goes to the merits here because Tennessee Elections Office already had her Certificate of Restoration on file in their office. Right, but Counsel, did you even allege that you helped that voter? I understand that's post-summary judgment information, so it's query whether we can even consider it. But yes, there's an allegation that this happened to that person, but there's no allegation that Tennessee NAACP spent any money assisting that person or any resources assisting that person, correct? Well, that person is a Tennessee NAACP member and she also is a volunteer for the organization. But I was mostly pointing to that as an example to kind of get to my second response to Judge Marsh, which is to the extent that the court finds the declarations that were currently below to be insufficient, then the proper move is exactly what happened very recently in this court in Fair Housing Center versus Singh, which is to send this back for the district court to allow for the development of the record to address the types of questions that you're asking now, Judge Larson, to allow the NAACP to kind of dig into the declarations and say, okay, you want more specificity, we can provide that because we are on a weekly basis interacting with people that need help. There's another declaration in the record. But isn't it true that in Fair Housing, they had a different theory of standing? Their theory was very close to the theory that was in Alliance, which was, oh, we just, we just spend money on our litigation, we spend money on educational activities, things like that. That's never been your argument, or I don't think that's been your argument. I thought your argument was, we're in the way you tried to establish standing in the first place was, we're in this business of registering voters who have felonies. And so why weren't you always on notice that you needed to develop the record? Yes, Your Honor, a couple of responses. One is, well, yes, this has always been our theory, the case law in the Sixth Circuit prior to Alliance for Hippocratic Medicine, even under that type of theory, was pretty focused on how you diverted your resources. Right. But that's the question. Have you diverted? You arguably haven't even shown that you diverted your resources. In other words, you haven't shown a single voter that you've actually spent resources to help, or that you will imminently have to help. And that was your theory all along. Why do you get another bite at the apple? There was no case law below pointed to by Tennessee, for example, to explain that you had to point to individual voters. What we had was declarations from the head of the NAACP saying, we regularly interact with these types of voters, we regularly receive rejections, we do taxi these types of voters. Now, we didn't identify them by name. I think it says like, we're aware of this. And on one occasion, maybe this has happened. I just don't know whether under regular summary judgment standard, that would be sufficient. One other response, Judge Larson, which is that we are on an appeal from a grant of summary judgment to Tennessee and NAACP. And so given that, I think the very best, you know, the very best that Tennessee can do here is a remand. They did not succeed on summary judgment below. If they had, they lost summary judgment below. That's not an appealable order, the loss of summary judgment below. And so the best that can be done here is a remand. And I think plainly given that there was no evidence on the other side, we at least raised a question of fact as to whether or not we'd incurred these types of injuries, given the declarations from the NAACP. But there's just no way for them to have even appealed their loss of summary judgment below. And so they cannot get from this court a new summary judgment ruling. The very best they can do is a remand. And I think Fair Housing Center is a perfect example of why that's especially appropriate here, where this court has acknowledged that it has tightened its standing case law and it has tightened what it wants to see from plaintiffs coming forward to prove standing. I think the remedy and standing are related in my head. And this is less about specific details and more about legal theory. So the district court granted you what I would call a universal injunction, meaning a barred application of the documentation policy writ large to all people. And it seems strange to me to think that an organization that is less connected to the NVRA's goals than, say, actual voter should be able to get more expansive relief. Now take the voter that I suppose you identified in the post-summary judgment materials. If she had sued, I would think the remedy would be she gets an injunction, the documentation policy doesn't apply to her, and that's it. And the injunction wouldn't apply to anybody else. So why should we think that the NAACP, which I would say is because you're relying on this diversion of resources theory, less connected to the goals of the NVRA than actual voters, should get more expansive relief? Why shouldn't the test be, yeah, you can come into court, you can identify the voters who want to help, but we're going to only give the NAACP an injunction that the documentation policy doesn't apply to the specific voters that you identified that are threatened by this activity? I have a variety of responses, Judge Murphy. First and foremost, the district court gave Tennessee an opportunity to explain what it thought would be an appropriately tailored injunction, and it gave a number of suggestions and objections to our suggestion. Nowhere did it suggest that it should be tailored only to individuals that Tennessee NAACP should help. In fact, it suggested a broader remedy that would be more generalized. So the district court gave the parties an opportunity to explain what kind of injunction they think would be appropriate, and Tennessee failed to raise this argument. And so I don't think we can fault the district court for not providing a more tailored injunction. And I think Tennessee might have done that for a couple of reasons. One is that if there was to be a remedy that was only for Tennessee NAACP individuals who were assisted, it would throw Tennessee into another legal trap. The NVRA requires uniform voter registration activities. And so as the Secretary of State, the Secretary is in charge of ensuring compliance with the NVRA, including uniformity. So it would just be creating another legal problem for them. And moreover, we'd ask for declaratory relief as well. And so I don't think it's the Secretary's plan to continue to violate the NVRA once there's a declaration that this policy is unlawful. And so I think that those are kind of the two crucial explanations here. The third is kind of a practical question about, we give a lot of discretion to the district court to shape appropriate relief. And the case law that this pointed to in the standing with respect to kind of universal injunctions was that you have to solve only the inadequacy that caused the harm. When you have a group like Tennessee NAACP that is engaged in statewide voter registration, willing to help all comers, it's impractical to really have a set of relief that would require them, I suppose, to come to the court every single time they identified a new voter who would be subjected to this policy and ask for new relief for that individual. That's not kind of what injunctive relief is kind of designed to provide. And so in that way, I think it's very different than some of these other universal injunction cases. You know, Labrador v. Poe, where Justice Gorsuch was kind of criticizing the universal injunction. There, the court had enjoined a law in its entirety, including portions of the law that no plaintiff had said affected them. So I think it's more about making sure that the remedy is kind of tailored to the inadequacy that caused the harm than necessarily always being about just providing relief to one plaintiff, especially in a case like this, where the state has a responsibility to provide uniformity in the application of the law. Ms. Lange, can I ask you another question about remedy? Why are you entitled to injunctive relief at all? If your harm is that you've diverted resources and that's a pocketbook injury, that just seems compensable with damages, which I don't think you're seeking. I don't understand why you can get injunctive relief at all. You have an adequate remedy at law. The NVRA doesn't provide for a damages remedy, first and foremost, Your Honor. But beyond that, the problem for the NAACP is not just a backwards-looking problem. That's exactly what injunctive relief is meant to provide for, is that this is an ongoing problem. The NAACP is willing to eat the costs it's engaged in. It has had to incur in the past. But it cannot be the case that it has to come to the court for a pocketbook injury for an ongoing injury. Injunctive relief standards are about can you prove an ongoing injury. There's no question that there is an ongoing unlawful policy here that has an ongoing harm to the Tennessee NAACP. Yeah, yeah. Okay, I understand. Yeah. And I want to make sure that before I close, I point to the question of mootness, which the state has assiduously ignored. But it's crucial, I think, to your consideration of standing, remedy, and the merits, which is that when we sued, we sued over a policy that was much broader than this policy. And then on the eve of summary judgment, they changed that policy. And the district court looked at this court's case law on mootness and said in those types of circumstances, where there isn't a new law, there isn't any binding precedent, and there was kind of a suspiciously timed change in policy that could be reversed at any moment, that the plaintiff can't be deprived of their remedy for that reason. Coordinator Goins has admitted in his own declaration that it is unnecessary to have documentation from people with grace period convictions, people with pre-1973 non-infamous convictions. And the district court was right to enjoin that given this court's mootness case law. And finally, as far as ongoing merits violations, I would kind of urge you to consider the fact that Tennessee does not dispute in any way that it is violating the law as to the federal form. It agrees in its own briefing that the federal law requires them to accept and use the federal form, and they do not do that for people with felony convictions. And if Tennessee NAACP had the opportunity to use the federal form, that would at least impart remedy there. Can I ask, if you don't mind, Judge Bush, if I can ask a question despite the time going over. I'm just switching to the merits a little bit. Would your view of necessary mean that dates of birth and residency are not necessary because election officials could get that information from, say, the DMV? No, your honor. Why is this different? I think the theory of necessary that you absolutely need it to be on the form in order to assess registration would suggest if the state can just get a person's number and they could look up the person, then the state could do all the work. I agree with you that the right answer to that probably should be no under the law, but I'm having trouble distinguishing that fact pattern from your allegations here. Yeah, I think there's a number of responses. One is that lots of people don't have driver's license numbers, and they're not going to be able to distinguish on the front end who has driver's license numbers and who doesn't. Also, my knowledge of election administration tells me that you wouldn't be able to do a good match to even get birth dates without having the sufficient information on the form to be able to do those matches. So that information is just absolutely necessary for basic election administration procedures. And what we have here is something very different. We have an individual who's provided every piece of information appropriate on their form, the date of their conviction, where they were convicted, whether or not they've been provided rights restoration. They've provided all of that information. And I think that this is a crucial fact here. The vast majority of individuals affected by this policy right now are people who've had their rights restored, have post-1981 convictions, have had their rights restored. Anyone who checks the box that they've had a felony conviction and turns in an application has their application checked against the state's database of rights restorations, regardless of whether or not they, even if they include their own document. So if I were to go through all the trouble of gathering my own certificate of restoration and turn it in, they're nonetheless going to check their own database to make sure that they think that I've actually had my rights restored. So do you think there's a difference? So the statute talks about information on a form and it doesn't really talk about evidentiary proof of the information that the voter conveys. Do you think there are circumstances under your view where states can require not just that you provide the information on the form, but also that you provide the documentary proof that establishes that the information is accurate? I think ITCA suggests yes, but only in the circumstance where the state is able to prove that that's necessary for them to enforce their voter qualification, something that plainly was not done below. Why would it ever be necessary if you could say it's under penalty of perjury? So if you lie, you could go to prison if you lie on a voter registration form. So I think a perfect example comes out of the Fish v. Kobach cases, which is where the 10th Circuit said if you were able to put forward evidence that notwithstanding attestations of penalty of perjury, non-citizens are regularly registering to vote, they're violating that law and that there's no other way for you to kind of stem that tide other than to require additional documentary proof that the perjury requirement has been insufficient for you, then you could show that it's necessary. Of course, in that particular case, Kansas didn't come close to meeting that threshold, but that's not to say that they couldn't. I think it is a little bit of going to be a little higher burden when you're asking for additional documentation because of the way that the statute is written, because there is a penalty of perjury, because the legislative history tells us that they had rejected documentation policies, but that's not this case. This is a case where the state didn't put forward any evidence that this was necessary, and the only evidence they really rely on now is about grace period convictions, which they've now conceded is actually not necessary. Okay, are there any more questions? Okay, thank you counsel. We'll hear a rebuttal. Thank you, your honor. I'd like to make a couple points on rebuttal. First, I want to talk about remand, and then I want to talk about causation and competitor standing a bit more. First, with respect to remand, as we kind of explained in our Rule 28J response, a remand here is unnecessary because the NAACP cannot establish standing as a matter of law, both with respect to causation, the harm is too attenuated, and with respect to their reliance on havens. Havens is just categorically and as a matter of law inapplicable to a case like this one. What do you do with the procedural posture, that is, that the only reason we have jurisdiction, I assume, is because of the issuance of the injunction, which triggered 1292B. I think I'm fuzzy on my jurisdictional stuff, but it's not a 1291 case. That's correct, your honor. So this is an argument that the NAACP has made for the first time in argument. My gut reaction is that your honors, of course, have the jurisdiction and the authority to say, as a matter of law, that standing does not exist in this case. So I don't think it's correct to say that the best we can do here is remand if, by saying that, my friend on the other side may suggest that you lack jurisdiction to vacate the order and instruct the district court to dismiss count six for lack of jurisdiction. I just don't think that is correct as a matter of law. But I will say, apart from the futility point, as Judge Larson was explaining in her colloquy with my friend, the injuries in the fair housing cases that were just remanded, that I believe all of your honors have joined, the injuries there were informational injuries at the heartland of payments, and that is simply not the case here. So we think that a different the association of data processing case, that's kind of the seminal competitor harm case, and the court has explained in Simon that in data processing, the harm was, quote, directly traceable to the action of the defendant federal official. So it complained of injurious competition that would have been illegal without that action, end quote. That's the Simon decision. So what I want to draw attention to there is the directness of between the challenged conduct and the competitive harm. And here we're drawing a line, excuse me, the line that the NAACP is drawing is just much more attenuated because of all the different individual steps that must be taken between the challenged conduct for the NAACP to incur the resource costs. And we've articulated those, I think, most recently in our 28-day response where we outlined all the different steps. The individual has to go to an event where the NAACP is. The individual has to approach the NAACP, ask the NAACP for help, not have their documents, and then the NAACP has to make the decision to help. That's just too attenuated. I'm happy to answer any questions. Thank you, counsel. We will take the case under submission and the clerk may adjourn the court.